1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**

8

**EASTERN DISTRICT OF CALIFORNIA**

9

10

11   JOSEPH GUTIERREZ,                 )   Case No.: 1:14-cv-00263-BAM
                                       )
12              Plaintiff,             )   **ORDER REGARDING PLAINTIFF'S**
                                       )   **SOCIAL SECURITY COMPLAINT**
13        v.                           )
                                       )
14   CAROLYN W. COLVIN, Acting         )
     Commissioner of Social Security,  )
15                                     )
                Defendant.             )
16   _____)

17

18                          <u>**INTRODUCTION**</u>

19        Plaintiff Joseph Gutierrez ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner") denying his application for disability insurance

21   benefits ("DIB") pursuant to Title II of the Social Security Act and for supplemental security income

22   ("SSI") under Title XVI of the Social Security Act.  The matter is currently before the Court on the

23   parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A.

24   McAuliffe.  The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by

25   substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this

26   Court affirms the agency's determination to deny benefits.

27   ///

28   ///

1

## FACTS AND PRIOR PROCEEDINGS

On January 28, 2011, Plaintiff filed his application for disability insurance benefits and supplemental security income.  AR 17, 139-40.[1]  Plaintiff alleged that he became disabled on September 28, 2010.  AR 17.  Plaintiff's application was denied initially and on reconsideration.  AR 70-71, 73-74. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  ALJ G. Ross Wheatley held a hearing on February 27, 2013, and issued an order denying benefits on March 20, 2013.  AR 14-26.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 3-6, 12-13.  The Appeals Council also denied a request to reopen and change the decision on January 24, 2014.  AR 1-3.  This appeal followed.

### Hearing Testimony

The ALJ held a hearing on February 27, 2013, in Stockton, California.  AR 31-69.  Plaintiff appeared and testified.  AR 31.  He was represented by attorney Jeffrey Milam.  AR 34.  Impartial Vocational Expert ("VE") George Meyers also testified.  AR 33.

Plaintiff primarily alleged disability due to Stage 4 chronic kidney failure, depression, and a past back injury.  AR 41, 81.  At age 46, he was 6' tall and weighed 240 pounds.

Plaintiff testified that he completed the seventh grade, but cannot read the newspaper or write a basic letter.  He can perform simple addition and subtraction, but not multiplication or division.  AR 36-38.

Plaintiff last worked for a week two months prior in construction, but stopped because he could not do the work.  AR 38-39.  Plaintiff also worked full-time as a carpenter for the first and second quarters of 2012.  His position required him to frame concrete forms and pour concrete.  Plaintiff stopped working in June 2012 and applied for unemployment.  AR 39-41.  Plaintiff stopped working in 2012 because of his health.  AR 41.

Five or six years before the hearing, Plaintiff was diagnosed with kidney failure.  It was explained to him that his kidneys were no longer functioning properly and he would have to get on

---

[1]    References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

dialysis.  He had not yet done any dialysis, and his condition was managed with medications and diet.  AR 41-42.  He does not have side effects from the medication, and he is on a donor list for a kidney transplant.  AR 42.

Plaintiff suffered a back injury, crushing three discs in his lower back, while working in construction.  The condition still bothers him and he last received treatment for it two years prior to the hearing.  AR 43.  He was not prescribed medication, but attended physical therapy for two months.  AR 44.

Plaintiff testified that he suffers from anxiety and depression, which was diagnosed six months prior to the hearing.  His treating psychiatrist did not prescribe any medication.  Plaintiff attended group therapy for approximately two months.  AR 45.  Although Plaintiff testified that the group therapy was very helpful, he has not returned.  AR 46.

Plaintiff also testified that he has high blood pressure for which he takes medication on a regular basis.  AR 50-51.

When asked about his physical capabilities, Plaintiff testified that he can walk about three or four blocks, stand about 45 minutes, sit about an hour, lift 75 pounds maximum and lift 25 pounds on a regular basis.  AR 46-47.

When asked about a typical day, Plaintiff testified that he gets his son ready and drives him to school, performs some housework, and watches about 2 hours of TV.  He does not know how to use a computer, but looks at his Facebook page about once a week.  AR 47-48.  He does not socialize or belong to social clubs, but attends church twice a week.  AR 49.  He can drive and drove approximately 35 miles to the hearing.  AR 49.

Plaintiff testified that he no longer drinks alcohol.  He last drank more than 10 years before the hearing and last used marijuana a year and a half before the hearing.  Plaintiff did not attend any type of rehab.  AR 50.

Plaintiff's counsel questioned Plaintiff about his reading and writing abilities.  Plaintiff explained that it was always a problem for him and he attended special ed classes in school.  He can recognize certain small words, but cannot write a grocery list.  Plaintiff clarified his computer use,

explaining that his wife set up a Facebook account and logs on for him.  She reads to him and types out his answers on the computer.  AR 52.

Plaintiff's counsel also questioned Plaintiff about his medications and their side effects. Plaintiff clarified that he goes to the bathroom a lot, but believed it was related to the kidney disease. Plaintiff has more frequency on some days than others.  For example, some days he will urinate two to three times an hour and some days he can go an hour without urinating.  AR 52-53.  Plaintiff testified that he has to go to the bathroom two or three times an hour at least two or three times a week. Plaintiff's doctor said it was in part due to the kidney disease.  AR 53-54.  With respect to the transplant list, it is an active search and he could be called any day to receive a new kidney.  AR 54. When his kidneys flare up, he gets fatigued, shaky and tired.  AR 57.

Plaintiff also testified that he has gout in his wrist and feet, which the doctor says is a result of the kidney disease.  His gout flares every month or other month, lasting about one to two weeks. When it flares, it is hard for Plaintiff to move his hands, handle things or walk.  He uses crutches to get to the restroom or to get around.  AR 54-55.  Plaintiff explained that when the gout flares in his hands, he can use his hands for about 15 to 20 minutes and then must rest them for a couple of hours.  During that time, he has constant throbbing pain and swelling.  AR 55-56.  Plaintiff takes medications to help the swelling.  AR 56. Plaintiff additionally testified that his low back is in constant pain and discomfort.  Plaintiff explained that it was like somebody was sitting on his shoulders, a pressure pain. AR 56-57.

Plaintiff's counsel also questioned Plaintiff about his construction work in 2012.  Plaintiff clarified that his doctor asked him to stop working because his kidney points had dropped and his blood pressure was up.  Plaintiff's doctor called him at his job.  Although he was on unemployment, he would have tried to do a job if they had given it to him.  Plaintiff believed he would have trouble doing a full-time job, but would have tried.  AR 58-59.  Plaintiff stopped receiving unemployment about a month and half prior to the hearing.  AR 60.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") George Meyers.  AR 60.  The VE testified that Plaintiff's past jobs were classified as carpenter (skilled work), short-order cook (semi-skilled work), and security guard (semi-skilled work).  AR 62.

The ALJ asked the VE hypothetical questions, contemplating an individual of claimant's age, education, and work experience.  AR 63.  In his first hypothetical, the ALJ asked the VE to consider an individual with postural limitations to occasional crouching and kneeling and who should avoid use of hazardous machinery and exposure to unprotected heights.  The VE testified that such an individual could perform Plaintiff's past jobs as security guard and short-order cook, but not as carpenter because of the exertional level, dangerous machinery and work at heights.  AR 63.

In a second hypothetical, the ALJ asked the VE to consider the same individual who is capable of performing at the light level, but the individual is additionally limited to frequent foot control bilaterally, occasional crouching and kneeling, and who should avoid the use of hazardous machinery and exposure to unprotected heights.  The VE stated that this hypothetical individual could perform Plaintiff's past work as security guard and short-order cook.  AR 63.

In a third hypothetical, the ALJ asked the VE to consider the same individual capable of performing light work, but with the additional limitations of frequent foot control bilaterally, occasional crouching and kneeling, avoiding all hazardous machinery and unprotected heights and who is limited to simple work as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks. The VE stated that the hypothetical individual could not perform any of Plaintiff's past work because it was semi-skilled or skilled.  AR 63-64.  However, the VE testified that this individual would be capable of performing other jobs, such as cleaner/housekeeper, assembler of small products, and inspector/hand packer.  AR 64.

In a final hypothetical, the ALJ asked the VE to consider an individual with the same limitations as the third hypothetical, but who also required additional breaks every two hours for 10 minutes in additional to regularly scheduled breaks.  The VE testified that there were no jobs that such an individual could perform.  AR 65.

Plaintiff's counsel also asked the VE hypothetical questions.  Based on the third hypothetical with an added moderate limitation in the ability to concentrate for a least two hour increments in order to maintain a regular work schedule, the VE testified that this person probably would not be able to sustain employment in the national economy.  AR 66.

Based on the third hypothetical with an added limitation of two days per week in which the individual would have to go to the bathroom to urinate two to three times every hour for three to five minutes, the VE did not know if there would be an ability to sustain work.  AR 66.

Before the close of the hearing, Plaintiff's counsel asked questions of Plaintiff regarding his examination by the Social Security doctor.  Plaintiff testified that the physical exam was shorter than what his own doctors would do.  The doctor did not do a neurological exam to test reflexes, sensory touching, strength testing, straight-leg raising or joint mobility.  AR 67-68.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 263-580.  The medical evidence, summarized here, will also be referenced below as necessary to this Court's decision.

The record documents Plaintiff's diagnoses of hypertension, obesity, low back pain and chronic kidney disease, stage 4 in July 2009.  AR 263.

In September 2010, Plaintiff saw his nephrology physician, Dr. Mohit Mohan Shahani.  Plaintiff reported an intentional tremor that interfered with his job.  Plaintiff's wife also reported a personality change, with Plaintiff losing his temper easily.  On physical examination, Plaintiff was obese with trace lower extremity edema.  Plaintiff's renal function remained stable and his hypertension was improved.  Dr. Shahani discussed the tremor with neurology and labs were to be checked.  AR 360-61.

In March 2011, Plaintiff saw Dr. Neville Patel for complaints of flu.  On physical examination, Plaintiff's genitourinary system was negative for dysuria, urgency, frequency, hematuria and flank pain.  On mental status exam, he was alert and oriented to person, place and time.  AR 315-316.

In the same month, Dr. Manolito Castillo, a qualified medical examiner, conducted a psychiatric evaluation of Plaintiff.  Dr. Castillo assigned Plaintiff a GAF of 61 and noted diagnoses of major depressive disorder and polysubstance dependence in full sustained remission.  Dr. Castillo believed Plaintiff had mental limitations because his mental illness remained uncorrected.  On mental status examination, Plaintiff's social interaction was normal and he put forth good effort.  His speech and psychomotor activity also were normal and he had good eye contact.  Plaintiff was oriented to month, date, year and city of evaluation.  He could recall six digits forward and three digits backward.

Although he could not multiply 5 x $0.25, he was able to appropriately respond when the question was rephrased to ask what 5 quarters were.  Plaintiff's thought processes were organized and he could handle his own funds.  Dr. Castillo opined that Plaintiff had moderate limitations in the ability to complete detailed and complex tasks, and moderate limitations in the ability to concentrate for at least two-hour increments at a time, in order to maintain a regular work schedule.   AR 350-353.

Plaintiff also underwent an internal medicine evaluation by Dr. Umer Malik, a qualified medical examiner.  On examination, Plaintiff was able to walk without assistance, his gait was normal and straight-leg raising was negative in the seated and supine position.  He had no paravertebral muscle spasms, tenderness, crepitus, effusion, deformities or trigger points.  He also had normal muscle bulk and tone, with strength at 5/5 in his upper and lower extremities and a strong bilateral handgrip at 5/5.  Dr. Malik opined that Plaintiff could stand and walk up to six hours, sit up to six hours and lift/carry 20 pounds occasionally and 10 pounds frequently.  He had no postural or manipulative limitations.  Dr. Malik assigned limitations on working with heights and working around heavy machinery due to Plaintiff's kidney problems, back pain and lower extremity swelling.  Dr. Malik's opinion was based on Plaintiff's current physical examination during which Plaintiff was found to be euvolemic without any obvious shortness of breath or fluid overload.  AR 354-359.

In April 2011, Dr. Helen Patterson, a state agency psychologist, reviewed Dr. Castillo's report, but found that the diagnosis was not supported or explained, and the functional limitations had "no objective support."   Plaintiff exhibited basically normal mental status and did not indicate any particular restrictions in his activities of daily living caused by alleged symptoms.  Plaintiff also did not have a treatment history beyond medication to help with sleep.  Additionally, Plaintiff had seen his primary care physician in March 2011, and the notes made "no mention of either complaints of symptoms of depression or observation of signs."  AR 336-338.

Dr. Patterson also completed a Psychiatric Review Technique and opined that Plaintiff's affective disorder was not severe.  Plaintiff had no restriction of activities of daily living and no difficulties maintaining social functioning.  He had mild difficulties in maintaining concentration, persistence or pace, but no repeated episodes of decompensation.  AR 339-349.

In May 2011, Plaintiff saw his nephrology physician, Dr. Shahani.  Plaintiff denied emesis, fatigue, and generalized weakness.  He had trace edema in his lower extremity.  Dr. Shahani opined that Plaintiff's renal function was slowly deteriorating, but Plaintiff had not selected a dialysis modality.  Plaintiff's hypertension was noted to be controlled, stable.  AR 318.

In July 2011, Plaintiff's renal function was stable.  His treatment plan included referral to the UCSF kidney transplant program.  AR 265, 267.

In August 2011, Plaintiff received treatment for chronic kidney disease and hypertension from Dr. Shahani.  Plaintiff denied any emesis, fatigue or generalized weakness.  On examination he was obese with trace edema in his lower extremity.  Dr. Shahani noted that Plaintiff's hypertension was poorly controlled, with Plaintiff taking his medication only once daily instead of twice.  AR 272. Later in August 2011, Plaintiff reported improved hypertension.  AR 288.

In October 2011, Plaintiff saw Dr. Shahani and reported abdominal cramping and left flank pain, but denied dysuria and urinary urgency/frequency/hesitancy.  Dr. Shahani planned to check urinalysis.  AR 376-77.

In November 2011, Plaintiff reported continued suffering from frequent episodes of toe and ankle pain secondary to gout.  He also reported worsening lower extremity edema and lower extremity fatigue.  On examination Plaintiff has 2+ bilateral symmetric lower extremity edema. Plaintiff was to be started on medication.  Dr. Shahani noted that Plaintiff's renal function and hypertension were stable.  AR 383-384.

In December 2011, Dr. Shahani completed a dialysis questionnaire.  He opined that Plaintiff's chronic kidney disease, stage 4, would most likely progress to end stage venal disease requiring dialysis or transplant.  AR 262.

Following a review of lab results, Dr. Shahani determined that Plaintiff had leukocytosis in December 2011.   AR 393.    Plaintiff reported taking prednisone for gout, which may cause leukocytosis.  He was tapering off prednisone.  AR 397.  Plaintiff later was diagnosed with borderline hyperkalemia, for which he had medication.  AR 399.  In late December, Plaintiff reported improved edema with medication, but later complained of his feet swelling.  AR 403, 408-409.

On December 27, 2011, Plaintiff presented to the Emergency Department complaining of right big toe and foot swelling.  On examination, Plaintiff exhibited no edema and no tenderness.  His right big toe had mild swelling and slight erythema, but no warmth.  Plaintiff also had tenderness of his foot, but no ankle or knee swelling.  Plaintiff was diagnosed with gout and prescribed prednisone taper.  He was to follow-up with Dr. Lim, a rheumatologist.  Additionally, an x-ray revealed a small 2nd metatarsal osteochondroma of his right foot.  AR 424-449.

On the same date, Plaintiff was evaluated by Dr. Win Minn Lim for possible gout.  Plaintiff complained of pain and swelling of his right foot, describing the pain as severe.  On physical examination, Plaintiff had joint tenderness mid foot with deformity or swelling, but no muscular tenderness and full range of motion.  Plaintiff was diagnosed with gout, and prescribed prednisone and allopurinol.  AR 412-417.

In January 2012, Plaintiff received counseling from a registered dietician.  He reportedly put off going to kidney class and dietician appointment because he felt he did not need it.  On examination, Plaintiff had a BMI of 33.70.  The dietician indicated that Plaintiff's home diet, which was high in fat, sodium and phosphorus, was exacerbating Plaintiff's renal and gout problems.  AR 455-457.

On February 29, 2012, a state agency physician reviewed Plaintiff's medical record and provided an opinion on his functional capacity.  Plaintiff could occasionally lift and carry 20 pounds, 10 pounds frequently, stand or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday.  He had no pushing or pulling limitations, and he could occasionally stoop and crouch.  The state agency physician opined that Plaintiff could perform light work.  AR 257-261.

In a Psychiatric Review Technique dated February 29, 2012, Dr. Douglas Robbins, a state agency psychologist, opined that Plaintiff's affective disorder (major depressive disorder) was not severe.  Plaintiff had no restriction of his activities of daily living and no difficulties in maintain social functioning. He had mild difficulties in maintaining concentration, persistence or pace, but no episodes of decompensation. Dr. Robbins affirmed the Psychiatric Review Technique completed by Dr. Patterson in April 2011, noting that no worsening of the mental condition was alleged.  AR 229-241.

On March 15, 2012, Plaintiff reported a gout flare on his foot with pain and swelling. Plaintiff's treating physician ordered prednisone, along with continued use of allopurinol. AR 468-469.

On March 22, 2012, Plaintiff's wife attempted to schedule an appointment with Dr. Shahani because Plaintiff was having trouble urinating and stomach cramps, along with decreased urine output. AR 470-471.

On May 16, 2012, Plaintiff reported to Dr. Shahani that he had resumed working for 4 months, lost 28 pounds and felt better.  On examination, Plaintiff's renal function and hypertension were stable.  AR 482-484.  Following a review of lab results, Dr. Shahani opined that Plaintiff's renal function had deteriorated since he started working in construction again outdoors.  Dr. Shahani advised Plaintiff that he should increase his fluid intake and contact UCSF to schedule a transplant. Plaintiff also selected peritoneal dialysis.  Dr. Shahani further advised Plaintiff that he could not push, pull or lift more than 10 pounds if he started peritoneal dialysis.  Additionally, Plaintiff had developed mild hyperkalemia and was encouraged to adhere to a low potassium diet. AR 491-492.

In June 2012, Plaintiff was diagnosed with borderline hyperkalemia.  AR 506.

On July 11, 2012, Plaintiff saw Dr. Shahani for follow-up treatment.  Plaintiff had no complaints, but Dr. Shahani noted Plaintiff was on disability because he developed acute chronic renal failure when working outside as a carpenter, hastening progression to end stage renal disease.  On examination, Plaintiff had lower extremity edema, but his renal function and hypertension were stable. Plaintiff was encouraged to lose weight.  AR 514-517.  Dr. Shahani also completed a work status report, placing Plaintiff off work from July 11, 2012, through October 11, 2012.  Dr. Shahani opined that Plaintiff could not work outside in the heat because he develops intravascular volume depletion, which hastens progression to renal failure.  AR 375.

Following a review of lab results, Dr. Shahani contacted Plaintiff on July 15, 2012, and informed him that his renal function had worsened.  Plaintiff was advised to discontinue soda. Plaintiff also was advised that his serum potassium was elevated and Plaintiff reported that he had not been following a low potassium diet closely.  AR 524-525.

On August 15, 2012, Dr. Shahani informed Plaintiff that he had borderline asymptomatic hyperkalemia.  Plaintiff stated that he had not been adherent to his diet.  Plaintiff also reported weight gain because he was not working and was eating fast food.  AR 532-533.

On August 20, 2012, Plaintiff requested a release to return to work.  Dr. Shahani completed a release for Plaintiff to return to work with a return date of August 9, 2012.  AR. 534-535.

On October 16, 2012, Plaintiff was diagnosed with mild hyperkalemia.  AR 544.  His renal function continued to improve.  AR 546.

On October 23, 2012, Plaintiff returned to the nephrology clinic for gout in his right toe interfering with ambulation.  Dr. Shahani ordered prednisone and recommended maintaining an oral fluid intake above 48 ounces daily.  AR 550-551.  Thereafter, on November 2, 2012, Plaintiff requested more prednisone because his toe pain and swelling persisted.  Dr. Shahani ordered a prednisone taper.  AR 552-553.  By November 2012, Plaintiff's renal function had worsened, which Plaintiff attributed to blood tests taken while he was recovering from the stomach flu.  AR. 558-559.

On January 16, 2013, Plaintiff saw Dr. Shahani for follow-up treatment.  Plaintiff reported episodes of dyspnea while at rest.  He attempted to work in construction for one week but was unable to continue because of vertigo.  On examination, Plaintiff had lower extremity edema, but his renal function remained stable.  Dr. Shahani indicated that Plaintiff had worsening hyperchloremic metabolic acidosis secondary to renal failure and planned to start Bicitra.  Dr. Shahani believed that Plaintiff's dyspnea may be secondary to chemical exposure while working for the fire department.  AR 578-580.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 17-26.  More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since September 28, 2010.  AR 19.  Further, the ALJ identified kidney renal disease, disorder of back and gout as severe impairments.  AR 19-21.  Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 21.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work.  Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, sit six hours in an eight-hour workday, stand and walk six hours during an eight-hour workday, frequently use foot controls bilaterally, and occasionally crouch and kneel.  He also must avoid all use of hazardous machinery and exposure to unprotected heights. AR 21-25.  The ALJ found that Plaintiff could perform his past relevant work as a short-order cook and a security guard.  AR 25.  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  AR 25-26.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In his opening brief, Plaintiff contends that the ALJ erred in evaluating (1) the medical opinion evidence and (2) the impact of his obesity on other impairments.

## DISCUSSION[2]

## 1.    The ALJ Properly Determined Plaintiff's Mental RFC

Plaintiff first contends that the ALJ failed to provide sufficient reasons for rejecting the mental limitations identified by his examining physician, Dr. Manolito Castillo.  (Doc. 14 at 8).  Specifically, Plaintiff alleges the ALJ improperly rejected Dr. Castillo's opinion that Plaintiff had moderate limitations in his ability to concentrate for at least two-hour increments in order to maintain a regular work schedule and moderate limitations in the ability to complete detailed and complex tasks.  (Doc. 14 at 8.)  According to Plaintiff, the ALJ improperly afforded greater weight to the opinions of Plaintiff's non-examining physicians.  (Doc 14 at 8-11.)

### A.    Dr. Castillo

Dr. Castillo, a board certified psychiatrist, examined Plaintiff on March 19, 2011.  On mental status examination, Plaintiff put forth good effort, his speech and psychomotor activity were normal, He was oriented and could recall six digits forward and three digits backwards.  Although Plaintiff had trouble when asked to multiple 5 x $0.25, he could perform the calculation when asked what 5 quarters were.  Plaintiff's thought processes were organized.  AR 351.  Dr. Castillo diagnosed Plaintiff with a major depressive disorder.  While noting that Plaintiff did well when assessed, he found moderate limitations in the ability to complete detailed and complex tasks and moderate limitation in

---

[2]    The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

the ability to concentrate for at least two-hour increments at a time, in order to maintain a regular work schedule.  AR 352.

The ALJ summarized Dr. Castillo's opinion and provided the following analysis:

> Manolito Castillo, M.D., a State Agency medical examiner, completed a psychiatric evaluation dated March 19, 2011. . . The claimant was assigned a GAF score of 61, which indicates some difficulty in social, occupational, or school functioning but generally functioning pretty well, has some meaningful interpersonal relationships.  Dr. Castillo opined that the claimant has no limitations in his ability to[:] socially interact with others at an age appropriate level; understand instructions; sustain an ordinary routine without sustained supervision; complete simple tasks; avoid normal hazards.  The claimant has moderate limitations in his ability to[:] complete detailed tasks; complete complex tasks; concentrate for at least two-hour increments at a time, in order to maintain a regular work schedule.  The claimant is capable of handling his own fund [Exhibit 11F].  The undersigned gives some weight to Dr. Castillo's opinion however, takes note that the "moderate" limitations indicated by Dr. Castillo are not supported.  For instance, Dr. Castillo opined that the claimant has moderate limitations in his ability to complete detailed tasks and complete complex tasks.  Considering the claimant's limited education and the vocational expert[']s testimony regarding skilled work, the undersigned finds it reasonable to limit the claimant to simple work.  However, the record does not support these limitations, the claimant's entire past work was either semiskilled or skilled occupations.  In fact, his last work is classified as skilled with a specific vocational preparation code of 7.  Furthermore, opining that the claimant is moderately limited in his ability to concentrate for at least two-hour increments at a time, in order to maintain a regular work schedule.  Again, the record does not support these limitations.  In fact, Dr. Castillo's own evaluation revealed no evidence of difficulty concentrating.  The claimant's social interaction was noted as "normal."  The claimant put forth good effort into the evaluation.  In general, the claimant's speech was normal.  Psychomotor activity was normal.  The claimant had good eye contact.  He was oriented to the month, date, year, and city of the evaluation.  The claimant was able to recall six digits forward and three digits backwards.  The claimant could not multiply 5 x $0.25.  When the question was rephrased and the claimant was asked what 5 quarters were, he responded appropriately with $1.25.  The claimants thought processes were organized  [Exhibit 11F].

AR 20.

### B.    State Agency Reviewing Physicians

State reviewing physicians, Drs. Patterson and Robbins, reviewed Plaintiff's medical records and completed a case analysis. The ALJ summarized the reviewing physicians' findings as follows:

> Helen C. [Patterson], Ph.D., a State Agency medical consultant, completed a Psychiatric Review Technique (PRT) dated April 14, 2011. Dr. [Patterson] opined that the claimant has no limitations in activities of daily living and maintaining social functioning and mild limitations in maintaining concentration, persistence, or pace [Exhibit 10F]. D. Robbins, Ph.D., a State Agency medical consultant, completed a

Psychiatric Review Technique (PRT) dated February 29, 2012.  Dr. Robbins concurred with Dr. [Patterson]'s opinion dated April 14, 2011  [Exhibit 1F].  Dr. [Patterson] and Dr. Robbins's opinions [are given] significant weight as they are consistent with each other and supported by the lack of mental health care and complaints in included in the record.

The claimant is not taking prescribed mental health medication.  He testified that he just recently attended two group therapy sessions.  As the [claimant's] alleged [mental health condition] does not impose any restrictions on the claimant's ability to perform basic work activities, the undersigned finds that these conditions, by themselves, are non-severe.

AR 21.

## C.    Legal Standards

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where an examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the examining physician's ultimate conclusions. *Id.* If the examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31. The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a physician if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the

record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871, 874-75 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-601 (9th Cir. 1999).

### D.     Discussion

Plaintiff argues that the ALJ erred by not accepting the entirety of Dr. Castillo's findings; specifically, the ALJ improperly rejected the moderate limitations in concentration and the ability to complete detailed and complex tasks found by Dr. Castillo. Contrary to Plaintiff's assertion, the ALJ was not required to accept the entirety Dr. Castillo's opinion. *Russel v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).

In this case, the ALJ provided specific and legitimate reasons for rejecting the moderate limitations found by Plaintiff's examining physician in favor of Plaintiff's reviewing physicians. First, the ALJ gave some weight to Dr. Castillo's opinion, but found that the moderate limitations identified by Dr. Castillo were not supported by the record. When a medical opinion is not supported by objective evidence, that opinion properly may be rejected. *Burkhart*, 856 F.2d at 1339–40 (ALJ properly rejected treating physician's opinion which was unsupported by medical findings, personal observations or test reports); *Batson v. Comm'r.*, 359 F.3d at 1195 (an ALJ may properly reject a physician's opinion that is conclusory and unsupported by objective medical findings); *see also* 20 C.F.R. §§ 404.1527(c)(3),(4) (in weighing a medical source opinion, the ALJ will consider the explanation and medical evidence the doctor provides in support of his opinion, as well as the consistency of the opinion with other evidence in the record).

In particular, the ALJ rejected the moderate limitations in Plaintiff's ability to complete detailed and complex tasks based on Plaintiff's past work in semiskilled or skilled occupations. AR 20. Plaintiff contends that the ALJ improperly focused on Plaintiff's ability to perform complex tasks prior to the onset of his disability. (Doc. 14 at 9.) However, the record reflects that Plaintiff worked after his alleged onset date of September 28, 2010. Indeed, Plaintiff testified that he worked in 2012 as a carpenter, which is a skilled position, but was forced to quit because of his physical condition.

AR 39, 41, 58-59, 62.  Plaintiff did not stop working because of his depression or other mental health impairment.

The ALJ also rejected the moderate limitations in Plaintiff's ability to concentrate for at least two-hour increments at a time, in order to maintain a regular work schedule, as unsupported by the record.  AR 20.  In so doing, the ALJ focused on Dr. Castillo's own evaluation, which revealed no evidence of any difficulty concentrating.  Amongst other things, the ALJ cited Dr. Castillo's opinion that Plaintiff has no limitations in his ability to socially interact, understand instructions, and sustain an ordinary routine without sustained supervision.  AR 20, 351.  The ALJ also cited Dr. Castillo's findings that Plaintiff put forth good effort in the evaluation, his speech and psychomotor activity were normal, he was oriented to the month, date, year and city of evaluation, he was able to recall six digits forward and three digits backwards, his thought processes were organized, and he could perform a math calculation after the question was rephrased.  AR 20, 351.

Second, the ALJ accorded "significant weight" to the opinions of Drs. Peterson and Robbins because they were "consistent with each other and supported by the lack of mental health care and complaints in included in the record."  AR 21.  These physicians reviewed the entire medical record and found that Plaintiff only had mild limitations in his ability to maintain concentration, persistence and pace.  AR 21, 239, 347.  Indeed, Dr. Patterson expressly disagreed with Dr. Castillo's report, finding that the diagnosis was "not supported and isn't explained."  AR 337.  Dr. Patterson observed that on examination Plaintiff "exhibited a basically normal mental status, doesn't indicate any particular [activities of daily living] restrictions caused by alleged symptoms, and has no[] treatment [history] beyond medication prescribed to help [with] sleep."  AR 337.  Dr. Patterson also observed that Plaintiff was seen by his primary care physician in March 2011, but the treatment note made "no mention of either complaints of symptoms of depression or observation of signs."  AR 337.  Dr. Patterson concluded that Dr. Castillo "gave functional limitations for which there is no objecting support, including within the CE report."  AR 337-338.  Dr. Robbins later affirmed Dr. Patterson's findings.  AR 241.

A non-examining physician's opinion may constitute substantial evidence when it is consistent with other independent evidence in the record.  *Tonapeytan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.

2001).  Further, the ALJ has the responsibility for resolving conflicts in the record, and a court will not disturb an ALJ's findings if they are supported. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). The ALJ appropriately concluded that the opinions of Drs. Patterson and Robbins were consistent with each other and supported by the lack of mental health care, lack of prescribed medication and lack of complaints included in the record.  AR 21.  There is ample medical evidence in the record to support the ALJ's resolution of the differing opinions between the examining and reviewing physicians, such that his decision is supported by substantial evidence.

## II.     The ALJ Properly Determined Plaintiff's Physical RFC

Plaintiff next challenges the ALJ's improperly rejected the environmental restrictions imposed by his treating physician, Dr. Shahani.  In particular, Plaintiff alleges that the ALJ failed to give any reasoning for rejecting Dr. Shahani's opinion that Plaintiff was required to avoid exposure to heat. (Doc. 14 at 12.)

### A. Dr. Shahani

In May 2012, following a review of lab results, Dr. Shahani opined that Plaintiff's renal function had deteriorated since he started working in construction outdoors.  AR 491-492.  In July 2012, Dr. Shahani noted Plaintiff was on disability because he developed acute chronic renal failure when working outside as a carpenter, hastening progression to end stage renal disease.  AR 514-517. Dr. Shahani placed Plaintiff off work from July 11, 2012 through October 11, 2012.  Dr. Shahani opined that Plaintiff could not work outside in the heat because he develops intravascular volume depletion, which hastens progression to renal failure.  AR 375.  On August 20, 2012, at Plaintiff's request, Dr. Shahani released Plaintiff for return to work with a return date of August 9, 2012.  Dr. Shahani did not identify any work restrictions.  AR. 534-535.

The ALJ summarized Dr. Shahani's work-related notes and provided the following analysis:

The claimant performed construction work classified as medium exertion level after the alleged onset date[] and only stopped at the direction of his physician.  According to Dr. Shahani, the claimant's condition was exacerbated by the environmental work condition required by the claimant's previous job.  On July 11, 2012, Dr. Shahani noted that the claimant was on disability because he develops acute chronic renal failure, when he works "outside" as a carpenter.  There are no opinions or restrictions from Dr. Shahani indicating that the claimant has any postural or exertional limitations.  He only mentions being "outside" as an indirect implied restriction.  Dr. Shahani did note that the claimant

could not push, pull, or lift more than 10 pounds "if" he started peritoneal dialysis. However, the claimant testified that he has not started dialysis.  Lastly [o]n August 20, 2012, Dr. Shahani completed an amended [] release for the claimant to go back to work on August 9, 2012.

AR 24.

**B. Legal Standard**

As previously discussed, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R. § 404.1527(c)(2).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Commisioner considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id*. § 404.1527(c)(2)(i)-(ii).  Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id.* § 404.1527(c)(3)-(6).

19

Here, the ALJ gave sufficient reasons, supported by substantial evidence, for rejecting any purported heat restriction identified by Dr. Shahani.  Although the ALJ acknowledged Dr. Shahani's treatment notes indicating that Plaintiff was on disability because he develops acute chronic renal failure when he works outside, the ALJ only found this be an indirect implied restriction.  AR 24.  More importantly, the ALJ acknowledged additional records from Dr. Shahani releasing Plaintiff to return to work on August 9, 2012.  AR 24.  According to the record, Dr. Shahani only precluded Plaintiff from working during the period from July 11, 2012 through August 8, 2012, and the subsequent work release contained no express restrictions.  AR 534.  This brief limitation period falls well short of heat or outside work limitation, and the ALJ appropriately rejected it based on other evidence in the record, including Dr. Shahani's own records.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ did not err in rejecting internally inconsistent statements by treating physician).  Further, the ALJ relied on the contrary findings of examining physician, Dr. Malik, who identified no extreme temperature limitations.  AR 357-358.  Dr. Malik's opinion alone constitutes substantial evidence, because it rests on his own independent examination.  *Tonapetyan*, 242 F.3d at 1149.

### III.     The ALJ Did Not Commit Reversible Error in Failing to Address Obesity

As a final matter, Plaintiff argues that the ALJ erred by failing to consider the possible effects of Plaintiff's obesity.  Plaintiff contends that he was diagnosed with obesity on multiple occasions, but the ALJ failed to mention Plaintiff's obesity at any step of the sequential evaluation process and failed to consider its impact on his other impairments and on his ability to perform basic work activity. (Doc. 14 at 14-15.)

Despite Plaintiff's current argument, neither he nor his attorney claimed that his obesity was a disabling impairment, exacerbated his existing impairments, resulted in any functional impairments, or impaired his ability to work.  AR 81, 87.  At the hearing, Plaintiff claimed that his was disabled due to Stage 4 chronic kidney failure, depression, and a past back injury.  AR 41.  The Court has reviewed the entirety of the hearing transcript, and finds that Plaintiff did not mention his obesity nor did he assert that it exacerbated an existing impairment, limited his functioning or impaired his ability to work.  In fact, the only evidence concerning obesity presented in this case consists of treatment notes, certain of which encouraged weight loss, but none that identified any functional limitations.  AR 263,

272, 318-319, 360-361, 455-457, 483-484, 514-517, 532-533, 578-579.  In light of Plaintiff's failure to claim obesity as a disabling impairment and the absence of any medical evidence identifying functional limitations stemming from his obesity, the ALJ's failure to address obesity in the sequential evaluation process was not error.  *See Burch v. Barnhart*, 400 F.3d 676, 682-84 (9th Cir. 2005) (ALJ did not commit reversible error by failing to consider obesity in the sequential analysis where claimant was represented by counsel and failed to present evidence that obesity exacerbated other impairments or resulted in functional limitations); *Aguilar v. Colvin*, No. 13-CV-891-BEN (NLS), 2014 WL 1653109, at *7 (S.D. Cal. Apr. 22, 2014) (ALJ did not err in failing raise and address obesity where claimant was represented by counsel and did not list obesity as a basis for the disability application, did not present evidence that it impaired her ability work, and there was no evidence it caused functional limitations); *Hogle v. Astrue*, No. EDCV 09-00129-MAN, 2010 WL 3894621, at *5-6 (C.D. Cal. Sept. 30, 2010) (ALJ did not err in failing to consider the impact of plaintiff's obesity at stage 2 or 3 of the sequential evaluation where plaintiff and her counsel failed to present any evidence that her obesity exacerbated her other impairments, limited her functioning, or impaired her ability to work, whether alone or in combination with her other impairments.)

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Joseph Gutierrez.

IT IS SO ORDERED.

Dated:   **August 28, 2015**                    /s/ *Barbara A. McAuliffe*

UNITED STATES MAGISTRATE JUDGE